Joseph A. Matteo, Esq.
David Powlen, Esq.
James Van Horn, Esq. (*pro hoc vice pending*)
Allison Scarlott, Esq. (*pro hac vice pending*)
BARNES & THORNBURG LLP
445 Park Avenue, Suite 700
New York, NY 10022
(646) 746-2000

*Attorneys for the Foreign Representative of Cimento Tupi, S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CIMENTO TUPI S.A.,[1]<br><br>        Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 21-10267 |

**VERIFIED PETITION FOR RECOGNITION OF THE**
**BRAZILIAN RJ PROCEEDING AND MOTION FOR ORDER**
**GRANTING RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 1515, 1517 AND 1520**

---

[1]     The last four digits of the Debtor's Brazilian tax identification number are 9223.

# Table of Contents

Preliminary Statement ....................................................................................................... 2

Background ......................................................................................................................... 5

   A.   The Debtor's Business and Operations ........................................................................ 5

   B.   The Debtor's Corporate and Capital Structure .................................................... 7

   C.   The Events Leading to the Brazilian RJ Proceeding ........................................... 8

   D.   The Commencement of the Brazilian RJ Proceeding and the Appointment of the
Petitioner as the Debtor's Foreign Representative ................................................... 11

   E.   The Debtor's Connections to the United States and this District .................................... 11

Jurisdiction and Venue ..................................................................................................... 12

Relief Requested ............................................................................................................. 12

Basis for Relief Requested .............................................................................................. 13

   A.   The Debtor Is Eligible to File this Chapter 15 Case and Venue Is Proper in this Court ... 13

   B.   The Debtor Satisfies the Requirements of Section 1517(a) ................................................. 15

       i.   The Brazilian RJ Proceeding Is a Foreign Proceeding ................................. 15

       ii.   Alberto Koranyi Ribeiro Is a Proper Foreign Representative ................................... 17

       iii.   The Petitioner Properly Filed this Chapter 15 Case................................................. 18

   C.   The Brazilian RJ Proceeding Is a "Foreign Main Proceeding" ........................................ 19

   D.   In the Alternative, the Brazilian RJ Proceeding Is a "Foreign Nonmain Proceeding" ...... 22

Notice .............................................................................................................................. 24

No Prior Request .............................................................................................................. 24

Conclusion ....................................................................................................................... 24

Alberto Koranyi Ribeiro (the "**Petitioner**") is the duly appointed foreign representative of Cimento Tupi, S.A. ("**Cimento Tupi**" or the "**Debtor**"), the debtor in a judicial reorganization (*recuperação judicial* or "**RJ**") proceeding in Brazil (the "**Brazilian RJ Proceeding**") pursuant to Federal Law No. 11.101 of February 9, 2005, and as amended on December 24, 2020 (the "**Brazilian Bankruptcy Law**"), which was approved by the Third Business Court of the Judicial District of the Capital of Rio de Janeiro on January 22, 2021 (the "**Brazilian Court**"). The Petitioner, on behalf of the Debtor, hereby moves this Court for the entry, pursuant to sections 1515, 1517 and 1520 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"): (i) granting this Verified Petition and commencing a case for the Debtor under chapter 15 ancillary to the Brazilian RJ Proceeding (the "**Chapter 15 Case**"); (ii) granting recognition of the Brazilian RJ Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code; (iii) recognizing the Petitioner as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, with respect to the Brazilian RJ Proceeding for purposes of this Chapter 15 Case; (iv) granting the Debtor, the Debtor's property, the Petitioner and the Brazilian RJ Proceeding, as applicable, all relief and protection afforded under section 1520 of the Bankruptcy Code, including the application of the section 362 stay with respect to any actions against the Debtor and/or property of the Debtor located within the territorial jurisdiction of the United States; and (v) granting such other and further relief as the Court deems just and proper.

In support of this request, the Petitioner relies upon (i) the *Declaration of Alberto Koranyi Ribeiro in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding* (the "**Foreign Representative Declaration**"); (ii) the *Declaration of Sérgio Ricardo Savi Ferreira in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main*

1

*Proceeding* (the "**Brazilian Counsel Declaration**"); (iii) the *Statement of Foreign Representative in Support of Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding* (the "**Foreign Representative Statement**"); and (iv) the *Lists and Statements Filed Pursuant to Bankruptcy Rule 1007(a)(4)* (the "**Bankruptcy Rule 1007(a)(4) Disclosure Statement**"), which are filed concurrently herewith and are incorporated by reference herein. In further support of this Verified Petition, the Petitioner respectfully represents to the Court as follows:

<u>**Preliminary Statement**</u>

Founded in 1949, the Debtor has been producing cement and related products in Brazil and providing those products to the Brazilian market for more than 70 years. The Debtor is a Brazilian company in every respect. It is incorporated in Brazil. Its registered office and headquarters are located in Rio de Janeiro. It operates exclusively in Brazil and derives all of its revenue from its Brazilian operations. Its management, employees and customers are all in Brazil.

Beginning in 2010, the Debtor sought to increase its production capacities to meet growing demand within Brazil and to maintain its competitiveness within the Brazilian market. To finance this effort, the Debtor issued notes in the aggregate principal amount of $185 million (as defined below, the "**Notes**"). The Debtor used the proceeds of these Notes to finance the expansion of its main production plant in Carandaí, Brazil. The Debtor also entered into credit facilities with other lenders, including a Brazilian state-owned development bank, to complete the plant expansion and purchase the necessary equipment.

The Debtor began operating the expanded Carandaí plant in 2013. In the second half of 2014, however, the Brazilian economy entered a recession. This downturn negatively affected the Brazilian construction industry and, by extension, the demand for the Debtor's products. At the same time, the Brazilian *Real* fell sharply against the United States Dollar, increasing the Debtor's borrowing costs on its dollar-denominated debt as well as other expenses, such as fuel costs, that

2

the Debtor pays in United States dollars. The COVID-19 pandemic has caused the *Real* to depreciate further against the Dollar, which has exacerbated the Debtor's financial difficulties.

Unable to meet all of its financial obligations in the short and intermediate term, the Debtor has been engaged in a multi-year effort to restructure its operations in an effort to reduce its costs and position itself for future success. As part of these efforts, the Debtor has been negotiating with its creditors to restructure its existing debt obligations. Negotiations with many of these creditors have proven successful. Certain purported holders of the Notes, however, have refused to agree to restructure the Notes that they claim to hold. In 2019, these purported holders commenced a lawsuit against the Debtor in the Supreme Court of the State of New York, New York County, which remains pending (as defined below, the "**New York State Court Action**"). The Debtor nonetheless has continued to negotiate with the current purported holders of the Notes, who still refuse to compromise.

The Debtor ultimately concluded that, despite its best efforts, it cannot overcome its current financial crisis without a court-sanctioned reorganization, particularly given the continued intransigence of certain of the current purported holders of the Notes. Left with no other option, the Debtor commenced the Brazilian RJ Proceeding on January 21, 2021, which the Brazilian Court accepted on January 22, 2021. In the meantime, the Debtor continues to operate its business under the judicial supervision of the Brazilian Court. If the Brazilian RJ Proceeding is allowed to proceed unimpeded, the Debtor believes that it will be able to restructure its obligations to preserve the Debtor's business for the benefit of all of the Debtor's stakeholders, including its creditors and more than 500 employees. The continued pendency of the New York State Court Action, however, threatens to undermine those efforts. The Debtor's board of officers therefore has appointed the

3

Petitioner to act as the Debtor's foreign representative and authorized him to commence this Chapter 15 Case.

The Petitioner respectfully submits that this Court should recognize the Brazilian RJ Proceeding as a foreign main proceeding and enter an order granting the Debtor the non-discretionary relief mandated under section 1520 of the Bankruptcy Code, including an automatic stay of the New York State Court Action, which is the only action pending against the Debtor in the United States. As set forth in greater detail below and in the accompanying Foreign Representative Declaration and Brazilian Counsel Declaration, the Petitioner respectfully submits that each of the requirements for recognition is satisfied here:

*First*, the Debtor has property in the United States and in this District. Specifically, the Debtor has issued dollar-denominated debt that is governed by New York law and subject to a New York forum selection clause. Additionally, the Debtor has an interest in funds in a client trust account held by Barnes & Thornburg LLP in New York. This property satisfies section 109(a) of the Bankruptcy Code, which applies here, and also establishes that venue is proper in this Court. *See infra* at pp. 13-15.

*Second*, the Petitioner has satisfied each condition for recognition set forth in section 1517(a) of the Bankruptcy Code. As numerous other courts in this District have found, the Brazilian RJ Proceeding is a "foreign proceeding" within the meaning of sections 1517(a) and 101(23) of the Bankruptcy Code. Furthermore, the Petitioner is a "person" under section 1517(a), 101(24) and 101(41) of the Bankruptcy Code, and has been duly appointed by the Debtor, which continues to manage its own affairs under the supervision of the Brazilian Court. The Petitioner likewise has satisfied all of the filing requirements set out in section 1515 of the Bankruptcy Code. *See infra* at pp. 15-18.

4

*Third*, the Petitioner has demonstrated that the Brazilian RJ Proceeding is a "foreign main proceeding" under section 1517(b)(1) of the Bankruptcy Code because the Debtor's center of main interest is, and always has been, in Brazil under any relevant test. As noted above and explained in greater detail below and in the Foreign Representative Declaration, the Debtor is a Brazilian company that operates solely in Brazil. Moreover, because the Debtor's management is located in Rio de Janeiro, the Debtor's "nerve center" is in Brazil. And designating the Brazilian RJ Proceeding as a "foreign main proceeding" would align with the expectations of the Debtor's creditors, including the holders of the Notes, who understood that they were investing in a Brazilian company based on the disclosures in the Debtor's offering memorandum and indenture. *See infra* at pp. 19-22.

*Finally*, in the event that the Court finds that the Brazilian RJ Proceeding is not a "foreign main proceeding," the Petitioner nonetheless has demonstrated that the Brazilian RJ Proceeding should be recognized as a "foreign nonmain proceeding" under section 1517(b)(2) of the Bankruptcy Code because the Debtor carries out nontransitory economic activity in Brazil that has a local effect in that country. *See infra* at pp. 22-23. Indeed, because the Debtor operates only in Brazil, where all of its employees and customers are located, the impact of its economic activities is felt almost entirely in Brazil. *See infra* at pp. 22-23.

The Petitioner, on behalf of the Debtor, therefore respectfully submits that this Court should recognize the Brazilian RJ Proceeding and grant the other relief described below.

## **Background**

### A.    **The Debtor's Business and Operations**

1.    Founded in 1949, the Debtor has been producing cement and related products in Brazil for the past 70 years. In 1952, the Debtor pioneered in Brazil the production of cement

incorporating basic granulated slag, which is a by-product from blast furnaces used in the steel industry.

2.      Over time, the Debtor has expanded its production capacity across the southeast region of Brazil. In 1971, the Debtor expanded its existing industrial complex of Volta Redonda, Brazil, by installing a second kiln for the production of clinker, an intermediate cement product, as well as additional equipment. In 1972, the Debtor adopted its current name, Cimento Tupi S.A. In 1976, the Debtor expanded its production capacity by opening a second plant in Brazil, this one in Carandaí, State of Minas Gerais (the "**Carandaí Plant**"). The Debtor also began operating cement terminals in Rio de Janeiro (in 1976) and Juiz de Fora (in 1982).

3.      In 1993 and 1997, the Debtor upgraded the Carandaí Plant, increasing the Debtor's production capacity first to 1.1 million tons of cement per year and then to 1.5 million tons of cement per year, respectively. As explained in greater detail below, the Debtor again expanded the Carandaí Plant in 2013. The Debtor currently has an installed production capacity of 3.4 million tons of cement per year. In addition to the Carandaí Plant and the industrial complex in Volta Redonda, the Debtor maintains a mixing and distribution plant in Mogi das Cruzes, State of São Paulo, Brazil.

4.      The Debtor is organized under the laws of Brazil with its registered office and headquarters located in Rio de Janeiro, Brazil, at Av. das Américas nº 500, Block 12, Rooms 205 and 206, Barra da Tijuca, CEP 22.640-100.

5.      The Debtor operates exclusively in Brazil, and derives all of its revenue from its Brazilian operations. All of the Debtor's offices and facilities are located in Brazil, including its two production facilities in Carandaí and Volta Redonda, and its mixing and distribution facility

6

in Mogi das Cruzes. Almost all of the Debtor's property and assets are located in Brazil, including all of its bank accounts.

6.      All of the Debtor's customers and its approximately 550 employees are located in Brazil, which represents a payroll of almost BRL40 million per year. In addition to its direct employees, the Debtor's Brazilian operations generate approximately 1,700 indirect jobs in Brazil. Further, the Debtor's senior management are all Brazilian citizens who live in Brazil, as are all five members of the Debtor's board of directors (although one board member has tax residence in Nassau, Bahamas). All of the Debtor's corporate decisions are made in Brazil, where the Debtor's board meeting are held. The vast majority of the Debtor's contracts are governed by Brazilian law.

**B.      The Debtor's Corporate and Capital Structure**

7.      The chart below summarizes, in relevant part, the Debtor's corporate structure:



8.      All of the Debtors' subsidiaries are Brazilian companies based in Brazil with the exception of Cimento Tupi Overseas Inc. and CP Cimento Overseas Co. Neither Cimento Tupi Overseas Inc. nor CP Cimento Overseas Co. is operational.

9.      Alberto Koranyi Ribeiro, the Petitioner, is the majority shareholder of the Debtor, holding 11,792 common shares and 11,790 preferred shares for a total of 23,582 shares. These

shares constitute 99.99% of the total share capital of the Debtor. The Petitioner is a Brazilian citizen who resides in Brazil. The Debtor's only other shareholder is Latcem S.A., a Luxembourg company that holds the remaining 0.01% of the total share capital, consisting of 1 common share and 2 preferred shares for a total of 3 shares.

10.    When the Debtor filed its petition to commence the Brazilian RJ Proceeding on January 21, 2021, the Debtor was liable for total financial indebtedness of BRL260,310,149.00, plus US$599,367,522, which included approximately BRL869,301.36 in debts to employees, BRL213,996,898 in secured claims, US$350,522,758 in unsecured notes, and US$248,682,672 in other unsecured financing.

## C.    The Events Leading to the Brazilian RJ Proceeding

11.    Beginning in 2010, demand for cement in Brazil began to grow due to civil construction projects in connection with the 2014 FIFA World Cup, the 2016 Olympics, the "Minha Casa, Minha Vida" initiative to expand access to low income housing, and oil discoveries made by Petrobras. The Debtor elected to expand the Carandaí Plant to meet this increased demand (both actual and anticipated) and remain competitive with other cement manufacturers in the Brazilian market, which were taking steps to expand their own operations.

12.    That expansion required significant additional capital. After reviewing its options, the Debtor decided to issue notes (the "**Notes**") in the total amount of US$100 million to finance the expansion of the Carandaí Plant. The Debtor issued these Notes pursuant to an indenture dated as of May 11, 2011 (the "**Indenture**"). A copy of the Indenture is attached hereto as Exhibit B.The initial offering was accompanied by an offering memorandum outlining the risks of investing in the Notes. Excerpts of the offering memorandum for the 2011 Notes offering are attached hereto as Exhibit C. In 2012, the Debtor issued another US$50 million in Notes pursuant to the Indenture. The supplement to the Indenture (the "**Indenture Supplement**") and excerpts of the offering

8

memorandum issued in connection with the 2012 Notes offering are respectively attached hereto as Exhibits D and E. And in December 2012, the Debtor entered into a US$25.5 million credit facility with the Agricultural Bank of China to finance part of the equipment imported from China.

13.    It soon became clear, however, that yet more capital would be necessary to complete the expansion. This increased capital need was due to, among other things, the depreciation of the Brazilian *Real* against the U.S. Dollar, financial difficulties experienced by some of the Debtor's suppliers, and changes to the scope of the original project. As a result, the actual cost of the project exceeded the initial budgeted amount by more than BRL170 million. To finish the project, the Debtor obtained two additional credit facilities, one from Banco De Investimentos Credit Suisse (Brazil) S.A., and another from Banco de Desenvolvimento do Estado de Minas Gerais, a state development bank in Brazil, in April 2013. The Debtor also issued an additional US$35 million in Notes pursuant to the Indenture and Indenture Supplement in 2014. Excerpts of the offering memorandum issued in connection with the 2014 Notes offering are attached hereto as Exhibit F.

14.    The expanded Carandaí Plant began operating in May 2013, generating new jobs, increased tax revenue, and greater sales of the Debtor's products in Brazil. In mid-2014, however, the Brazilian economy entered a recession, which drastically curtailed public sector investment in civil construction and infrastructure, and sharply reduced the demand for cement products generally and the Debtor's products specifically. Furthermore, since 2013, the value of the Brazilian *Real* has fallen sharply against the value of the U.S. Dollar—a trend that has accelerated during the COVID-19 pandemic. This falling exchange rate has exacerbated the Debtor's difficulties by increasing the real cost of the Debtor's dollar-denominated debts that the Debtor

pays in United States dollars, while also increasing other expenses, such as fuel costs, which follow global dollar-denominated prices.

15.    Since 2015, the Debtor has been negotiating with its creditors to restructure its debts. While negotiations with many creditors have been successful, some of the current purported holders of the Notes have refused to restructure the Debtor's obligations. In 2017, some purported holders of the Notes sent the Debtor a notice purporting to accelerate the payment of all principal and interest due on the Notes. In 2019, certain purported creditors claiming to hold more than half of the total principal amount of the outstanding Notes commenced an action against the Debtor in the Supreme Court of the State of New York, New York County. That action, which is captioned *Fratelli Investments Ltd., et al. v. Cimento Tupi, S.A.* (Case No. 654421/2019), is pending in the Commercial Division of the Supreme Court of the State of New York, New York County (the "**New York State Court Action**"). The current plaintiffs in the New York State Court Action claim to be the holders of Notes in the aggregate amount of $109,070,000. These plaintiff have asserted that the Debtor breached the Notes and Indenture, and seek compensatory damages in an amount equal to the unpaid principal and interest allegedly due on the Notes that they claim to hold. Furthermore, certain purported creditors commenced actions against the Debtor in Brazil.

16.    In addition to negotiating with its creditors, the Debtor's management has been engaged in a multi-year effort to restructure its operations to reduce its costs and position itself for future success. The Debtor's management is confident that demand in Brazil for its cement products will increase over time. Indeed, in October 2020, cement sales in Brazil were almost 15 percent higher compared to cement sales in October 2019. The Debtor's management believes that as the Brazilian economy improves, the Debtor will be well-positioned to take advantage of future increase in demand for cement products within Brazil.

**D.      The Commencement of the Brazilian RJ Proceeding and the Appointment of the Petitioner as the Debtor's Foreign Representative**

17.     Faced with a prepetition debt (as detailed above) that it was unable to pay, the Debtor commenced the Brazilian RJ Proceeding on January 21, 2021. On January 22, 2021, the Brazilian Court entered an order accepting the Debtor's application, which is attached hereto as Exhibit G. The Brazilian Court found that the Debtor had complied with the requirements of the Brazilian Bankruptcy Law for commencing a Judicial Restructuring, and granted the court-supervised reorganization of the Debtor. The Brazilian Court stayed all suits and executions against the Debtor, with certain exceptions as provided under Brazilian Bankruptcy Law. The Brazilian Court also appointed a judicial administrator and addressed other formalities, including which notifications were to be issued.

18.     While subject to the oversight of the Brazilian Court, the Debtor continues to manage its own business, and retains the right to administer its assets and affairs during the pendency of the Brazilian RJ Proceeding. The court-appointed judicial administrator is responsible for, among other things, overseeing Debtor's management of its day-to-day affairs.

19.     In a meeting on February 3, 2021, the board of officers of the Debtor, in accordance with the Debtor's bylaws, (i) appointed the Petitioner as the Debtor's foreign representative for purposes of this Chapter 15 Case and (ii) executed a power of attorney authorizing me to act as the Debtor's foreign representative in this Chapter 15 Case. True and correct copies of the minutes of the meeting and the power of attorney are attached hereto as Exhibit H.

**E.      The Debtor's Connections to the United States and this District**

20.     The Debtor has property in the United States and in this District. As noted above, the Debtor has issued Notes in the principal amount of $185 million pursuant to the Indenture. The Indenture, Indenture Supplement and Notes are all governed by New York law. *See* Ex. B § 11.08;

Ex. D § 3.2. Each party to the Indenture also agreed to submit to the non-exclusive jurisdiction of the state and federal courts "located in the Borough of Manhattan, New York City, New York" with respect to "any legal action, suit or proceeding against it with respect to its obligations, liabilities or any other matter arising out of or in connection with" the Indenture, the Indenture Supplement or the Notes. Ex. B § 11.13; Ex. D § 3.6. In addition, Barnes & Thornburg LLP holds a retainer from the Debtor in a bank account that is located in New York. Finally, the Debtor is the defendant in the New York State Court Action.

## Jurisdiction and Venue

21.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1501 as well as the *Amended Standing Order of Reference* dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

22.    This Chapter 15 Case has been properly commenced with respect to the Debtor in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of this Verified Petition.

23.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) and may be determined by this Court.

24.    As explained below, venue is proper in this Court pursuant to 28 U.S.C. § 1410(1) or, in the alternative, pursuant to 28 U.S.C. § 1410(2) and/or 28 U.S.C. § 1410(3).

## Relief Requested

25.    The Petitioner, on behalf of the Debtor, seeks entry of the Proposed Order in the form attached hereto as **Exhibit A**, after notice and a hearing, (i) granting this Verified Petition and commencing this Chapter 15 Case; (ii) appointing the Petitioner as the Foreign Representative of the Debtor with respect to the Brazilian RJ Proceeding within the meaning of section 101(24)

12

of the Bankruptcy Code and authorizing the Petitioner to act on behalf of the Debtor in this Chapter

15 Case; (iii) recognizing the Brazilian RJ Proceeding as the foreign main proceeding (or, in the

alternative, the foreign nonmain proceeding) of the Debtor pursuant to section 1517 of the

Bankruptcy Code; (iv) granting the Debtor, the Debtor's property, the Petitioner and the Brazilian

RJ Proceeding, as applicable, all relief and protection afforded under section 1520 of the

Bankruptcy Code, including the application of the section 362 stay with respect to any actions

against the Debtor and/or property of the Debtor located within the territorial jurisdiction of the

United States; and (v) granting such other and further relief as the Court deems just and proper.

**Basis for Relief Requested**

A.    **The Debtor Is Eligible to File this Chapter 15 Case and Venue Is Proper in this Court**

26.    "Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility

requirements set forth in section 109(a) of the Bankruptcy Code." *In re Serviços de Petroleó*

*Constellation S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) ("*Constellation*"). Under section

109(a), "only a person that resides or has a domicile, a place of business or property in the United

States, or a municipality, may be a debtor" under the Bankruptcy Code. 11 U.S.C. § 109(a). Courts

have found that the "property" requirement of section 109(a) is satisfied "by even a minimal

amount of property located in the United States." *In re B.C.I. Fins. Pty Ltd.*, No. 17-11266 (SHL),

2018 WL 1973723, at *4 (Bankr. S.D.N.Y. Apr. 24, 2018) (citation and internal quotation marks

omitted).

27.    "[A] debtor's contract rights, including rights pursuant to debt that contains a New

York governing law and forum selection clause, constitute intangible property of the debtor in

New York for purposes of section 109(a)." *Constellation*, 600 B.R. at 269. Courts within this

District therefore routinely hold that dollar-denominated debt issued pursuant to an indenture

13

containing a New York choice-of-law provision and a New York forum selection clause satisfies

section 109(a). *See, e.g.*, *id.* at 269 (section 109(a) satisfied where "the principal documents setting

forth [debtor's] prepetition debt obligations are governed by New York law and generally

contemplate New York as a venue for disputes"); *In re Olinda Star Ltd.*, 614 B.R. 28, 40 (Bankr.

S.D.N.Y. 2020) (section 109(a) satisfied because debtor issued notes pursuant to indenture that

contained a New York venue provision); *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R.

650, 655 (Bankr. S.D.N.Y. 2016) ("*Inversora Eléctrica*") (dollar-denominated debt issued

pursuant to indenture containing New York choice-of-law and venue provisions satisfied section

109(a)); *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. 2017) ("*U.S. Steel Canada*")

("debt subject to a New York governing law clause and a New York forum selection clause

constitutes property in the United States"); *In re Berau Capital Res. PTE Ltd.*, 540 B.R. 80, 83-84

(Bankr. S.D.N.Y. 2015) (indenture containing New York choice-of-law and venue provisions is

"property of [the debtor] in the United States, thereby satisfying the section 109(a) eligibility

requirement").

28.     Here, the Indenture, the Indenture Supplement and the Notes are all governed by

New York law. *See* Indenture § 11.08; Indenture Supplement § 3.2. Moreover, each party to the

Indenture agreed to submit to the non-exclusive jurisdiction of the state and federal courts located

in the Borough of Manhattan for any action "with respect to its obligations, liabilities or any other

matter arising out of or in connection with" the Indenture, the Indenture Supplement or the Notes.

*See* Indenture § 11.13; Indenture Supplement § 3.6. The Debtor therefore satisfies section 109(a)

of the Bankruptcy Code.[2]

---

[2]     As noted above, the Debtor has an interest in funds in a client trust account held by Barnes & Thornburg LLP
in the United States. This property also satisfies section 109(a). *See, e.g.*, *Olinda Star*, 614 B.R. at 40; *Constellation*,
600 B.R. at 268-69; *U.S. Steel Canada*, 571 B.R. at 610; *In re Poymanov*, 571 B.R. 24, 29 (Bankr. S.D.N.Y. 2017).

29.     Furthermore, given that the Indenture, the Indenture Supplement and the Notes are subject to New York law and provide for venue in the state and federal courts in the Borough of Manhattan, venue is proper in this Court because the Debtor has "principal assets" in this District. 28 U.S.C. § 1410(1); *see also Olinda Star*, 614 B.R. at 40; *Constellation*, 600 B.R. at 269. In the alternative, venue is proper in this District because the New York State Court Action is currently pending against the Debtor in the Supreme Court of the State of New York, New York County, which is within this District. *See* 28 U.S.C. § 1410(2) (venue is proper in a district "in which there is pending against the debtor an action or proceeding in a Federal or State court"). Finally, and in any event, venue in this Court would be "consistent with the interests of justice and the convenience of the parties" based on the relief sought in this Chapter 15 Case. 28 U.S.C. § 1410(3).

## B.     The Debtor Satisfies the Requirements of Section 1517(a)

30.     Under 11 U.S.C. § 1517(a), a court must recognize a chapter 15 case if (i) it concerns a "foreign proceeding," (ii) it is commenced by a duly authorized "foreign representative" of the debtor who is "person or body," and (iii) the foreign representative has properly filed a petition for recognition and all supporting documentation required under section 1515 of the Bankruptcy Code. 11 U.S.C. § 1517(a); *see also Inversora Eléctrica*, 560 B.R. at 653. The Petitioner has satisfied each of these conditions.

### i.     The Brazilian RJ Proceeding Is a Foreign Proceeding

31.     A proceeding is a "foreign proceeding" within the meaning of Section 1517(a) where it meets the definition set forth in Section 101(23) of the Bankruptcy Code. *See, e.g.*, *Inversora Eléctrica*, 560 B.R. at 653. Section 101(23) "defines a 'foreign proceeding' as (1) a collective judicial or administrative proceeding under a law relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) in which the assets and affairs of the debtor are subject

15

to control or supervision of a foreign court, and (4) for the purpose of reorganization or liquidation." *Constellation*, 600 B.R. at 270.

32.    It is well established that judicial restructuring proceedings under Brazilian Bankruptcy Law are "foreign proceedings" within the meaning of sections 101(23) and 1517(a) of the Bankruptcy Code. *See, e.g.*, *Constellation*, 600 B.R. at 270 ("Courts in this Circuit have long agreed that the Brazilian RJ process satisfies these standards.") (citing cases); *see also In re Oi, S.A.*, 587 B.R. 253, 269 (Bankr. S.D.N.Y. 2018) ("this and other courts have found that Brazilian bankruptcy law is consistent with U.S. policy and provides to creditors meaningful protections similar to those provided under U.S. law"); *In re OAS S.A.*, 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) ("Brazil has a comprehensive bankruptcy law that in many ways mirrors our own"); *In re Rede Energia, S.A.*, 515 B.R. 69, 98 (Bankr. S.D.N.Y. 2014) ("Brazilian bankruptcy law meets our fundamental standards of fairness and accords with the course of civilized jurisprudence.").

33.    The same conclusion applies here. As set out in greater detail in the Brazilian Counsel Declaration, the Brazilian RJ Proceeding satisfies each element of the definition of a "foreign proceeding." First, the Brazilian RJ Proceeding is a "collective" proceeding that involves the treatment of multiple creditors and is subject to Brazilian Bankruptcy Law. *See* Brazilian Counsel Decl. ¶ 6. Second, the Brazilian RJ Proceeding is pending in a foreign country—Brazil. Third, while the Debtor continues to manage its own business and retains the right to administer its own assets and affairs, the Debtor is subject to the oversight of the Brazilian Court and an independent court-appointed judicial administrator has been appointed to, among other things, oversee the Debtor's management of its day-to-day affairs. *See id.* ¶¶ 6, 14-18. Finally, the purpose of the Brazilian RJ Proceeding is to reorganize the Debtor's obligations to its creditors and other

stakeholders. *See id.* ¶ 6. The Brazilian RJ Proceeding therefore is a "foreign proceeding" with respect to the Debtor as required under section 1517(a). *See* 11 U.S.C. § 1517(a)(1).

          **ii.**        **Alberto Koranyi Ribeiro Is a Proper Foreign Representative**

34.      "A chapter 15 case is properly commenced by the filing of a petition for recognition by a 'foreign representative.'" *Constellation*, 600 B.R. at 270 (citing 11 U.S.C. §§ 1504, 1515(a).) Under section 101(24), a "foreign representative" is "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). A "person" includes an "individual." 11 U.S.C. § 101(41).

35.      Here, the Debtor has appointed the Petitioner as its foreign representative. The Petitioner is an individual, and thus a "person" within the meaning of sections 101(24) and 1517(a) of the Bankruptcy Code.

36.      Furthermore, the Debtor's board of officers has duly authorized the Petitioner to act as the Debtor's foreign representative for purposes of this Chapter 15 Case.[3] This authorization satisfies chapter 15 because "the Bankruptcy Code does not require judicial authorization or appointment of the foreign representative." *In OAS S.A.*, 533 B.R. 83, 93-95 (Bankr. S.D.N.Y. 2015). Instead, it is sufficient that the foreign representative is "appointed by a corporation engaged in a foreign bankruptcy proceeding" where the debtor continues to manage its own affairs while in bankruptcy. *Ad Hoc Grp. of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012), *cert. dismissed*, 133 S. Ct. 1862 (2013).

---

[3]    A copy of the document authorizing and empowering the Petitioner to act as foreign representative is attached hereto as Exhibit H.

37.     Here, the Debtor has retained possession of its assets and continues to manage its own affairs during the Brazilian RJ Proceeding. *See* Foreign Representative Decl. ¶ 22. This arrangement is permitted under Brazilian Bankruptcy Law, which provides that debtors generally continue to manage their own affairs under the supervision of the Brazilian Court. *See* Brazilian Counsel Decl. ¶¶ 14-17. The Debtor therefore has ample authority to appoint a foreign representative, thus making the Petitioner a proper foreign representative pursuant to 11 U.S.C. § 1517(a)(2). *See, e.g.*, *Constellation*, 600 B.R. at 270 (foreign representative of Brazilian company properly authorized by resolution of the boards of directors of each debtor); *OAS*, 533 B.R. at 90, 93-95 (foreign representative of Brazilian company properly authorized by resolution of board of directors and power of attorney); *In re Oi S.A.*, Case No. 16-11791 (SHL) (Bankr. S.D.N.Y. July 22, 2016) (same); *In re Lupatech S.A.*, No. 14-11559 (SMB) [ECF No. 26] (Bankr. S.D.N.Y. June 26, 2014) (same).

### iii.     The Petitioner Properly Filed this Chapter 15 Case

38.     Section 1504 of the Bankruptcy Code provides that "a case under this chapter is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515." 11 U.S.C. § 1504. The Petitioner has satisfied all requirements of section 1515 of the Bankruptcy Code. First, the Petitioner satisfied the requirements of section 1515(a) of the Bankruptcy Code by filing this Verified Petition. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Second, the Petitioner has submitted all documents and information required under section 1515(b) regarding the Brazilian RJ Proceeding and the appointment of the Petitioner as the Debtor's foreign representative with respect to this Chapter 15 Case. *See supra* at pp. 11, 17. Third, the Petitioner has submitted a statement identifying any other foreign proceedings known to the Petitioner, as required under Section 1515(c). *See* Foreign Representative Statement. Finally, the

18

Petitioner has made all other disclosures required under Bankruptcy Rules 1007(a)(4) and 7007.1. *See* Bankruptcy Rule 1007(a)(4) Disclosure Statement. Because the Petitioner has satisfied the requirements set forth in section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4), this Chapter 15 Case has been properly commenced.

### C.     The Brazilian RJ Proceeding Is a "Foreign Main Proceeding"

39.     A foreign proceeding must be recognized if it is a "foreign main proceeding." 11 U.S.C. § 1517(b)(1). A "foreign main proceeding" is "a foreign proceeding pending in the country where the debtor has its center of main interests." 11 U.S.C. § 1502(4). Although the Bankruptcy Code does not define the phrase "center of main interests" ("**COMI**"), "[t]here is a rebuttable presumption that COMI is where the debtor has its 'registered office.'" *Constellation*, 600 B.R. at 272. *See* 11 U.S.C. § 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests.").

40.     Here, the Debtor's registered office is in Brazil, creating a presumption that Brazil is the Debtor's COMI. *See* Foreign Representative Decl. ¶ 8. And while that presumption is rebuttable, all relevant factors support the conclusion that the Debtor's COMI is in Brazil. Courts in this District have held that the following non-exclusive factors are relevant to determining a debtor's COMI:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes

*In re SPhinX, Ltd.*, 351 B.R. 103, 122 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).

41.     Each of these factors points to Brazil as the Debtor's COMI. As described in the Foreign Representative Declaration, the Debtor is headquartered in Brazil and conducts all of its

operations in Brazil. *See* Foreign Representative Decl. ¶¶ 8-9. Furthermore, the Debtor's management is located in Brazil, as are all of its employees, customers, offices and facilities. *See id.* ¶¶ 9-10. Almost all of the Debtor's assets, including all of its bank accounts, likewise are all located in Brazil. *See id.* ¶ 9. Finally, while the Indenture and Notes are governed by New York law, Brazilian law would apply to most of the Debtor's disputes because most of its contracts are governed by Brazilian law. *See id.* ¶ 10.  Accordingly, the Debtor's COMI is in Brazil. *See, e.g.*, *U.S. Steel Canada*, 571 B.R. at 611 (finding that debtor's COMI "is plainly in Canada" where, among other things, the debtor was incorporated in Canada, had its registered office in Canada, operated only in Canada, generated all revenue in Canada, substantially all of its major customers were in Canada, employed Canadian residents and all of the debtor's senior management was located in Canada); *Inversora Eléctrica*, 560 B.R. at 656 (holding that debtor's COMI was in Argentina where "substantially all of the Debtor's property, operations and customers are located in Argentina" and (1) the debtor's registered office was in Argentina, (2) the debtor's main assets were in Argentina, and (3) the debtor's corporate governance was directed from Argentina).

42.    Additional facts bolster the conclusion that the Debtor's COMI is in Brazil. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) ("*Fairfield Sentry*") (holding that the *SPhinX* factors are "a helpful guide, but consideration of these specific factors is neither required not dispositive"). For example, because the Debtor operates exclusively in Brazil, its COMI is both "regular and ascertainable" to third parties, and "not easily subject to tactical removal." *Id.* at 130. Furthermore, because the Debtor's management directs, controls and coordinates the Debtor's activities from Brazil, *see* Foreign Representative Decl. ¶ 10, the Debtor's "nerve center" is in that country, *Fairfield Sentry*, 714 F.3d at 138 n.10

(holding that "a court may certainly consider a debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI").

43.     Finally, a finding that the Debtor's COMI is in Brazil also would align with the expectation of the Debtor's creditors, including the purported holders of the Notes. *See Constellation*, 600 B.R. at 274 (noting that "expectations of creditors" is a relevant factor to determining a debtor's COMI and that "the evaluation of creditor expectations has focused on reviewing disclosures in offering memoranda and indentures"). In its offering memoranda for the Notes, the Debtor disclosed that "[a]ll of our operations and customers are located in Brazil" and discussed various risks with respect to the Brazilian economy and Brazilian government actions. Ex. C at 21-25; Ex. E at 22-24; Ex. F at 22-24. The Debtor also disclosed that "[i]f we are unable to pay our indebtedness, including our obligations under the notes, we may become subject to bankruptcy proceedings in Brazil," and that "Brazilian bankruptcy laws" may be less favorable to creditors than the law in other jurisdictions. Ex. C at 25; Ex. E at 26; Ex. F at 26. And the Indenture recites that the Debtor is "duly organized and validly existing under the laws of the Federative Republic of Brazil" and directs that all notices to the Debtor should be addressed to the Debtor's address in Rio de Janeiro. *See* Ex. B at p. 1 & § 11.01. Holders of the Notes "therefore understood that they were investing in" a Brazilian-based business, and that they "might ultimately have to enforce their rights in a Brazilian bankruptcy proceeding." *OAS*, 533 B.R. at 102-03 (holding that debtor's COMI was in Brazil based on disclosures of Brazil-specific risks in the offering memorandum, including possibility of a Brazilian bankruptcy, and provision in indenture directing all notices to an address in Brazil).

44.     As set out above, the Petitioner has satisfied each requirement of section 1517(a) and also demonstrated that the Debtor's COMI is in Brazil. The Petitioner therefore respectfully

submits that the Court should recognize the Brazilian RJ Proceeding as a "foreign main proceeding" under chapter 15. The Petitioner also respectfully submits that the Court should grant the "automatic, nondiscretionary relief" provided in section 1520(a), "including an automatic stay of all proceedings against the debtor in the United States." *Fairfield Sentry*, 714 F.3d at 133; *see also* 11 U.S.C. § 1520(a)(1); *see also Inversora Eléctrica*, 560 B.R. at 655 ("Upon an order recognizing a proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code makes the automatic stay under sections 361 and 362 applicable with regard to a stay of actions against property of the debtor within the jurisdiction of the United States.").

> **D.    In the Alternative, the Brazilian RJ Proceeding Is a "Foreign Nonmain Proceeding"**

45.    A foreign proceeding must be recognized if it is a "foreign nonmain proceeding." 11 U.S.C. § 1517(b)(2). A foreign proceeding is a "foreign nonmain proceeding" if it is pending in a country where the debtor has an "establishment." *Id.* An "establishment" is "any place of operations where the debtor carries out nontransitory economic activity." 11 U.S.C. § 1502(2). A debtor carries out nontransitory economic activity in a foreign country if it has "'a seat for local business activity' in the foreign country that is relevant" and is engaged "in business or professional activity from that seat of local business activity that has 'a local effect on the marketplace.'" *In re Mood Media Corp.*, 569 B.R. 556, 561-62 (Bankr. S.D.N.Y. 2017) (citation omitted); *see also In re Creative Finance Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016).

46.    Here, even if the Debtor's COMI is not in Brazil (which it is), the Court should find that the Debtor has an "establishment" in Brazil within the meaning of sections 1517(b)(2) and 1502(2). As set out above, the Debtor is a Brazilian corporation headquartered in Brazil, which is where all of its management, employees and operations are located. Indeed, as detailed above, the Debtor maintains all of its production and distribution facilities in Brazil, and derives all of its

revenue in Brazil. These facts more than establish the Debtor maintains "a 'minimum level of organization'" in Brazil "in a manner that was stable and apparent to third parties." *In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 85 (Bankr. S.D.N.Y. 2011) (citation omitted). Moreover, because the Debtor is managed exclusively from Brazil, employs over 500 people in Brazil, and produces and sells its products to customers in Brazil, its activities have "'a local effect'" on the Brazilian marketplace. *Mood Media*, 569 B.R. at 562 (citation omitted).

47.    To the extent that the Court recognizes the Brazilian RJ Proceeding as a foreign nonmain proceeding, the Petitioner requests that the Court enter a protective stay pursuant to section 362 of the Bankruptcy Code with respect to the Debtor and its property in the United States, including without limitation with respect to the New York State Court Action. *See* 11 U.S.C. §§ 1517(b)(2), 1521(a)(1), 1521(a)(6). *See, e.g.*, *Constellation*, 600 B.R. at 293 (granting stay and observing that "Debtors who are recognized as participating in foreign nonmain proceedings may be afforded nearly identical relief as those recognized as operating in foreign main proceedings"); *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 194 (S.D.N.Y. 2017) (noting that a stay is "available on a discretionary basis upon the recognition of" a foreign nonmain proceeding).

48.    A stay is appropriate here because "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected," 11 U.S.C. § 1522(a), insofar as the Brazilian RJ Proceeding is not "seriously and unjustifiably injuring United States creditors," H.R. Rep. No. 109-31, Pt. 1, at 116. Entering a stay will allow for the equitable, efficient and orderly administration of the Debtor's estate in the Brazilian RJ Proceeding, which will protect the interests of all stakeholders and maximize the value of the Debtor's assets by ensuring that the plaintiffs in the New York State Court Action cannot circumvent the Brazilian RJ Proceeding at

the expense of other interested parties. Moreover, all creditors will have the opportunity to participate in the Brazilian RJ Proceeding, which will not seriously or unjustifiably injure any United States creditor given that "this and other courts have found that Brazilian bankruptcy law is consistent with U.S. policy and provides to creditors meaningful protections similar to those provided under U.S. law." *Oi*, 587 B.R. at 269. *See supra* at pp. 16-17; Brazilian Counsel Decl. ¶ 12.

## Notice

49.      Notice of the Verified Petition has been provided to the parties (the "**Notice Parties**") set forth in Exhibit I annexed hereto (the "**Notice List**"). The Petitioner has filed an *Application Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 for an Order Scheduling Hearing and Specifying Form and Manner of Service of Notice, and Granting Related Relief* (ECF No. 7), and will provide such other or further notice as the Court directs.

## No Prior Request

50.      No previous request for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, the Petitioner respectfully requests that the Court: (i) grant the Verified Petition and enter the Proposed Order annexed hereto as **Exhibit A** recognizing the Brazilian Proceeding as the foreign main proceeding (or, in the alternative, as the foreign nonmain proceeding) of the Debtor and granting the requested relief in connection therewith; and (ii) grant the Petitioner such other and further relief as the Court deems just and proper.

24

Dated: February 11, 2021
     New York, New York

Respectfully submitted,

BARNES & THORNBURG LLP

By:    /s/ Joseph A. Matteo        
Joseph A. Matteo, Esq.
David Powlen, Esq.
James Van Horn, Esq. (*pro hac vice pending)*
Allison Scarlott, Esq. (*pro hac vice pending*)
445 Park Avenue, Suite 700
New York, NY 10022
Telephone: (646) 746-2000

*Attorneys for the Foreign Representative of
Cimento Tupi, S.A.*