Joseph A. Matteo, Esq.
David Powlen, Esq.
James Van Horn, Esq. (*pro hoc vice pending*)
Allison Scarlott, Esq. (*pro hac vice pending*)
BARNES & THORNBURG LLP
445 Park Avenue, Suite 700
New York, NY 10022
(646) 746-2000

*Attorneys for the Foreign Representative of Cimento Tupi S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CIMENTO TUPI S.A.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 21-10267 |

### DECLARATION OF ALBERTO KORANYI RIBEIRO IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR AN ORDER GRANTING RECOGNITION AND FINAL RELIEF IN AID OF A FOREIGN PROCEEDING PURSUANT TO 11 U.S.C. 1515, 1517 AND 1520

I, Alberto Koranyi Ribeiro, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am over the age of 18 and if, called upon, could testify to all matters set forth in this statement, except for those portions specified as being otherwise.

2. I am the Chief Executive Officer of Cimento Tupi, S.A. (the "**Debtor**"), and, as set forth below, the foreign representative appointed for the purposes of this Chapter 15 Case, which is filed on behalf of the Debtor in respect of the judicial reorganization ("*recuperação judicial*" or "**Judicial Reorganization**") proceeding (the "**Brazilian RJ Proceeding**") of the Debtor pending

---

[1] The last four digits of the Debtor's Brazilian tax identification number are 9223.

in the Third Business Court of the Judicial District of the Capital of Rio de Janeiro (the "**Brazilian Court**") pursuant to Federal Law 11.101 of February 9, 2005, and as amended on December 24, 2020 (the "**Brazilian Bankruptcy Law**") of the laws of the Federative Republic of Brazil ("**Brazil**").

3. I submit this declaration (the "**Declaration**") in support of the *Verified Petition for Recognition of the Brazilian RJ Proceeding and Motion for Order Granting Related Relief pursuant to 11 U.S.C. §§ 1515, 1517 and 1520* (the "**Verified Petition**" and, together with the Official Form Petition filed contemporaneously herewith, the "**Petition**")[2] and *Application Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 for Order Scheduling Hearing and Specifying Form and Manner of Service of Notice, and Granting Related Relief* (the "**Notice Procedures Motion**") (collectively, the "**First Day Pleadings**").

4. I make this declaration based on documents that I have reviewed and facts known to me through my work as the Chief Executive Officer and foreign representative of the Debtor. Where relevant information has been provided to me by others, the information is true to the best of my knowledge and belief. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## BACKGROUND

**A.    The Debtor's Business and Operations**

5. Founded in 1949, the Debtor has been producing cement and related products in Brazil for the past 70 years. In 1952, the Debtor pioneered in Brazil the production of cement incorporating basic granulated slag, which is a by-product from blast furnaces used in the steel industry.

---

[2]    All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Verified Petition.

6.      Over time, the Debtor has expanded its production capacity across the southeast region of Brazil. In 1971, the Debtor expanded its existing industrial complex of Volta Redonda, Brazil, by installing a second kiln for the production of clinker, an intermediate cement product, as well as additional equipment. In 1972, the Debtor adopted its current name, Cimento Tupi S.A. In 1976, the Debtor expanded its production capacity by opening a second plant in Brazil, this one in Carandaí, State of Minas Gerais (the "**Carandaí Plant**"). The Debtor also began operating cement terminals in Rio de Janeiro (in 1976) and Juiz de Fora (in 1982).

7.      In 1993 and 1997, the Debtor upgraded the Carandaí Plant, increasing the Debtor's production capacity first to 1.1 million tons of cement per year and then to 1.5 million tons of cement per year, respectively. As explained in greater detail below, the Debtor again expanded the Carandaí Plant in 2013. The Debtor currently has an installed production capacity of 3.4 million tons of cement per year. In addition to the Carandaí Plant and the industrial complex in Volta Redonda, the Debtor maintains a mixing and distribution plant in Mogi das Cruzes, State of São Paulo, Brazil.

8.      The Debtor is organized under the laws of Brazil with its registered office and headquarters located in Rio de Janeiro, Brazil, at Av. das Américas nº 500, Block 12, Rooms 205 and 206, Barra da Tijuca, CEP 22.640-100.

9.      The Debtor operates exclusively in Brazil, and derives all of its revenue from its Brazilian operations. All of the Debtor's offices and facilities are located in Brazil, including its two production facilities in Carandaí and Volta Redonda, and its mixing and distribution facility in Mogi das Cruzes. Almost all of the Debtor's property and assets are located in Brazil, including all of its bank accounts.

10. All of the Debtor's customers and its approximately 550 employees are located in Brazil, which represents a payroll of almost BRL40 million per year. In addition to its direct employees, the Debtor's Brazilian operations generate approximately 1,700 indirect jobs in Brazil. Further, the Debtor's senior management are all Brazilian citizens who live in Brazil, as are all five members of the Debtor's board of directors (although one board member has tax residence in Nassau, Bahamas). All of the Debtor's corporate decisions are made in Brazil, where the Debtor's board meeting are held. The vast majority of the Debtor's contracts are governed by Brazilian law.

B.  **The Debtor's Corporate and Capital Structure**

11. The chart below summarizes, in relevant part, the Debtor's corporate structure:



12. All of the Debtors' subsidiaries are Brazilian companies based in Brazil with the exception of Cimento Tupi Overseas Inc. and CP Cimento Overseas Co. Neither Cimento Tupi Overseas Inc. nor CP Cimento Overseas Co. is operational.

13. I am the majority shareholder of the Debtor, holding 11,792 common shares and 11,790 preferred shares for a total of 23,582 shares. These shares constitute 99.99% of the total share capital of the Debtor. I am a Brazilian citizen who resides in Brazil. The Debtor's only other

shareholder is Latcem S.A., a Luxembourg company that holds the remaining 0.01% of the total share capital, consisting of 1 common share and 2 preferred shares for a total of 3 shares.

14.     When the Debtor filed its petition to commence the Brazilian RJ Proceeding on January 21, 2021, the Debtor was liable for total financial indebtedness of BRL260,310,149.00, plus US$599,367,522, which included approximately BRL869,301.36 in debts to employees, BRL213,996,898 in secured claims, US$350,522,758 in unsecured notes, and US$248,682,672 in other unsecured financing.

C.     **The Events Leading to the Brazilian RJ Proceeding**

15.     Beginning in 2010, demand for cement in Brazil began to grow due to civil construction projects in connection with the 2014 FIFA World Cup, the 2016 Olympics, the "Minha Casa, Minha Vida" initiative to expand access to low income housing, and oil discoveries made by Petrobras. The Debtor elected to expand the Carandaí Plant to meet this increased demand (both actual and anticipated) and remain competitive with other cement manufacturers in the Brazilian market, which were taking steps to expand their own operations.

16.     That expansion required significant additional capital. After reviewing its options, the Debtor decided to issue notes (the "**Notes**") in the total amount of US$100 million to finance the expansion of the Carandaí Plant. The Debtor issued these Notes pursuant to an indenture dated as of May 11, 2011 (the "**Indenture**"). A copy of the Indenture is attached as Exhibit B to the Verified Petition. The initial offering was accompanied by an offering memorandum outlining the risks of investing in the Notes. Excerpts of the offering memorandum for the 2011 Notes offering are attached as Exhibit C to the Verified Petition. In 2012, the Debtor issued another US$50 million in Notes pursuant to the Indenture. The supplement to the Indenture (the "**Indenture Supplement**") and excerpts of the offering memorandum issued in connection with the 2012 Notes

5

offering are respectively attached as Exhibits D and E to the Verified Petition. And in December 2012, the Debtor entered into a US$25.5 million credit facility with the Agricultural Bank of China to finance part of the equipment imported from China.

17.    It soon became clear, however, that yet more capital would be necessary to complete the expansion. This increased capital need was due to, among other things, the depreciation of the Brazilian *Real* against the U.S. Dollar, financial difficulties experienced by some of the Debtor's suppliers, and changes to the scope of the original project. As a result, the actual cost of the project exceeded the initial budgeted amount by more than BRL170 million. To finish the project, the Debtor obtained two additional credit facilities, one from Banco De Investimentos Credit Suisse (Brazil) S.A., and another from Banco de Desenvolvimento do Estado de Minas Gerais, a state development bank in Brazil, in April 2013. The Debtor also issued an additional US$35 million in Notes pursuant to the Indenture and Indenture Supplement in 2014. Excerpts of the offering memorandum issued in connection with the 2014 Notes offering are attached as Exhibit F to the Verified Petition.

18.    The expanded Carandaí Plant began operating in May 2013, generating new jobs, increased tax revenue, and greater sales of the Debtor's products in Brazil. In mid-2014, however, the Brazilian economy entered a recession, which drastically curtailed public sector investment in civil construction and infrastructure, and sharply reduced the demand for cement products generally and the Debtor's products specifically. Furthermore, since 2013, the value of the Brazilian *Real* has fallen sharply against the value of the U.S. Dollar—a trend that has accelerated during the COVID-19 pandemic. This falling exchange rate has exacerbated the Debtor's difficulties by increasing the real cost of the Debtor's dollar-denominated debts that the Debtor

6

pays in United States dollars, while also increasing other expenses, such as fuel costs, which follow global dollar-denominated prices.

19. Since 2015, the Debtor has been negotiating with its creditors to restructure its debts. While negotiations with many creditors have been successful, some of the current purported holders of the Notes have refused to restructure the Debtor's obligations. In 2017, some purported holders of the Notes sent the Debtor a notice purporting to accelerate the payment of all principal and interest due on the Notes. In 2019, certain purported creditors claiming to hold more than half of the total principal amount of the outstanding Notes commenced an action against the Debtor in the Supreme Court of the State of New York, New York County. That action, which is captioned *Fratelli Investments Ltd., et al. v. Cimento Tupi, S.A.* (Case No. 654421/2019), is pending in the Commercial Division of the Supreme Court of the State of New York, New York County (the "**New York State Court Action**"). The current plaintiffs in the New York State Court Action claim to be the holders of Notes in the aggregate amount of $109,070,000. These plaintiff have asserted that the Debtor breached the Notes and Indenture, and seek compensatory damages in an amount equal to the unpaid principal and interest allegedly due on the Notes that they claim to hold. Furthermore, certain purported creditors commenced actions against the Debtor in Brazil.

20. In addition to negotiating with its creditors, the Debtor's management has been engaged in a multi-year effort to restructure its operations to reduce its costs and position itself for future success. The Debtor's management is confident that demand in Brazil for its cement products will increase over time. Indeed, in October 2020, cement sales in Brazil were almost 15 percent higher compared to cement sales in October 2019. The Debtor's management believes that as the Brazilian economy improves, the Debtor will be well-positioned to take advantage of future increase in demand for cement products within Brazil.

**D.     The Commencement of the Brazilian RJ Proceeding and the Appointment of the Petitioner as the Debtor's Foreign Representative**

21.     Faced with a prepetition debt (as detailed above) that it was unable to pay, the Debtor commenced the Brazilian RJ Proceeding on January 21, 2021. On January 22, 2021, the Brazilian Court entered an order accepting the Debtor's application, which is attached as Exhibit G to the Verified Petition. The Brazilian Court found that the Debtor had complied with the requirements of the Brazilian Bankruptcy Law for commencing a Judicial Restructuring, and granted the court-supervised reorganization of the Debtor. The Brazilian Court stayed all suits and executions against the Debtor, with certain exceptions as provided under Brazilian Bankruptcy Law. The Brazilian Court also appointed a judicial administrator and addressed other formalities, including which notifications were to be issued.

22.     While subject to the oversight of the Brazilian Court, the Debtor continues to manage its own business, and retains the right to administer its assets and affairs during the pendency of the Brazilian RJ Proceeding. The court-appointed judicial administrator is responsible for, among other things, overseeing Debtor's management of its day-to-day affairs.

23.     In a meeting on February 3, 2021, the board of officers of the Debtor, in accordance with the Debtor's bylaws, (i) appointed me as the Debtor's foreign representative for purposes of this Chapter 15 Case and (ii) executed a power of attorney authorizing me to act as the Debtor's foreign representative in this Chapter 15 Case. True and correct copies of the minutes of the meeting and the power of attorney are attached to the Verified Petition as Exhibit H.

**E.     The Debtor's Connections to the United States and this District**

24.     The Debtor has property in the United States and in this District. As noted above, the Debtor has issued Notes in the principal amount of $185 million pursuant to the Indenture. The Indenture, Indenture Supplement and Notes all are governed by New York law. *See* Indenture §

8

11.08; Indenture Supplement § 3.2. Each party to the Indenture also agreed to submit to the non-exclusive jurisdiction of the state and federal courts "located in the Borough of Manhattan, New York City, New York" with respect to "any legal action, suit or proceeding against it with respect to its obligations, liabilities or any other matter arising out of or in connection with" the Indenture, the Indenture Supplement or the Notes. Indenture § 11.13; Indenture Supplement § 3.6. In addition, Barnes & Thornburg LLP holds a retainer from the Debtor in a bank account that I have been informed is located in New York. Finally, the Debtor is the defendant in the New York State Court Action.

## **REQUEST FOR RECOGNITION**

25. I believe that the Brazilian RJ Proceeding is a "foreign proceeding" as I have been advised that term is defined in section 101(23) of the United States Bankruptcy Code. To the best of my knowledge, information and belief, the Brazilian RJ Proceeding is a collective judicial proceeding under a Brazilian law relating to insolvency or adjustment of debt in which the assets and affairs of the Debtor are subject to control or supervision by a Brazilian court, for the purposes of reorganization or liquidation. I also believe that I am a proper foreign representative insofar as I am a person and was duly appointed the board of officers of the Debtor, which continues to manage its own affairs during the pendency of the Brazilian RJ Proceeding. I also understand that all documents, statements, and lists required under chapter 15 of the United States Bankruptcy Code and the United States Bankruptcy Rules have been filed contemporaneously herewith.

26. Additionally, I believe that the Brazilian RJ Proceeding is a "foreign main proceeding" as I understand that term is defined in section 1517(b)(1) of the United States Bankruptcy Code. As described in greater detail above and in the Verified Petition, the Debtor is a Brazilian company with its registered office and headquarters in Rio de Janeiro, Brazil. The

9

21-10267-jlg    Doc 3    Filed 02/11/21    Entered 02/11/21 14:49:16    Main Document
Pg 10 of 10

Debtor operates exclusively in Brazil, which is where all of the main strategic, financial and operational decisions related to the Debtor's affairs are made. All of the Debtor's employees, management and customers, and almost all of its property and assets, are located in Brazil, and the Debtor derives its revenue exclusively from its Brazilian operations. The Debtor's economic activity therefore has been and continues to be centered in Brazil, where the Brazilian RJ Proceeding is pending. Based on these facts, I believe that Brazil is the Debtor's "center of main interests" as I understand that term is used in section 1502(4) of the United States Bankruptcy Code.

27.     In the alternative, I believe that the Brazilian RJ Proceeding is a "foreign nonmain proceeding" as I understand that term is defined in section 1517(b)(2) of the United States Bankruptcy Code because the Debtor carries out nontransitory economic activity in Brazil, as described above.

28.     As the duly appointed foreign representative of the Debtor, I have directed our United States counsel, Barnes & Thornburg LLP, to (i) commence this Chapter 15 Case for the Debtor and (ii) seek recognition of the Brazilian RJ Proceeding as a "foreign main proceeding" or, in the alternative, as a "foreign nonmain proceeding."

Executed on this 11th day of February, 2021 in Rio de Janeiro, State of Rio de Janeiro, Brazil.

/s/ Alberto Koranyi Ribeiro
Alberto Koranyi Ribeiro