Joseph A. Matteo, Esq.
David Powlen, Esq.
James Van Horn, Esq. (*pro hoc vice pending*)
Allison Scarlott, Esq. (*pro hac vice pending*)
BARNES & THORNBURG LLP
445 Park Avenue, Suite 700
New York, NY 10022
(646) 746-2000

*Attorneys for the Foreign Representative of Cimento Tupi S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CIMENTO TUPI S.A.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 21-10267 |

### DECLARATION OF SÉRGIO RICARDO SAVI FERREIRA IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN MAIN PROCEEDING

1. I, Sérgio Ricardo Savi Ferreira, a Brazilian citizen, lawyer, and a partner in the law firm of BMA - Barbosa, Müssnich, Aragão Advogados, with its principal place of business in the Federative Republic of Brazil ("**Brazil**"), and member in good standing of the Brazilian Bar Association, State of Rio de Janeiro branch, enrolled under #106.962 (OAB/RJ) and State of São Paulo branch under #303.022 (OAB/SP), hereby declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States, as follows:

2. I submit this declaration in support of the *Verified Petition for Recognition of the Brazilian RJ Proceeding and Motion for Order Granting Related Relief pursuant to 11 U.S.C. §§ 1515, 1517, and 1520* (the "**Verified Petition**") filed concurrently herewith by the foreign

---

[1] The last four digits of the Debtor's Brazilian tax identification number are 9223.

representative of Cimento Tupi S.A. (the "**Debtor**"). To assist this Court's consideration of the Verified Petition, I describe for the Court the relevant legal aspects of the court-ordered reorganization process under Brazilian law.

## BACKGROUND AND QUALIFICATIONS

3.   I am an attorney and head of the Insolvency & Restructuring practice at the law firm of BMA - Barbosa Müssnich Aragão Advogados, with offices at Largo do Ibam no. 1/3rd floor, Humaitá, Rio de Janeiro, RJ, Brazil.

4.   Pertinent aspects of my training are as follows: In 2000, I obtained a bachelor's degree at the Federal University of Rio de Janeiro School of Law (Rio de Janeiro, Brazil). In 2004, I obtained a Master degree in Civil Law at the State University of Rio de Janeiro School of Law (Rio de Janeiro, Brazil). In 2007, I received an L.L.M degree in International Legal Studies at NYU School of Law (New York, USA), and, in 2010, I obtained my Ph.D. degree in Civil Law at the State University of Rio de Janeiro School of Law (Rio de Janeiro, Brazil). I am also a member of the International Insolvency Institute and its Insolvency Development and Practice Committee.

## THE BRAZILIAN JUDICIAL REORGANIZATION PROCESS

### I.   The Brazilian Judicial Reorganization Proceeding

5.   The Brazilian Restructuring and Bankruptcy Law, published as Federal Law No. 11,101 on February 9, 2005 (the "**Brazilian Bankruptcy Law**") governs insolvency proceedings in Brazil. The Brazilian Bankruptcy Law seeks to foster direct collaboration with and participation of creditors and the court in a company's reorganization. Moreover, the

Brazilian Bankruptcy Law seeks to encourage, when possible, a company's successful court-supervised reorganization, rather than its liquidation.[2]

6.  The Brazilian Bankruptcy Law provides for a court-supervised proceeding known as *recuperação judicial* ("**Judicial Reorganization**" or "**RJ**").[3] Judicial Reorganization in Brazil is a type of court-supervised arrangement between a debtor and its creditors in which the claims of part of the creditors are ultimately distributed according to the provisions of the plan of reorganization. A Judicial Reorganization is analogous to a chapter 11 bankruptcy proceeding in the United States in that it is a collective mechanism to adjust a debtor's debts to its creditors under the control and supervision of a competent Brazilian court.

## II.  Requirements for Commencing a Judicial Reorganization

7.  To commence a Judicial Reorganization, a company files a petition for Judicial Reorganization with the court in the jurisdiction in which it maintains its *principal estabelecimento* (this "principal place of business" is discussed further below). In its petition, the debtor must include (i) a description of the causes of its financial distress, (ii) its financial statements, and (iii) a list of its creditors, which will be published in an official court gazette, and (iv) any other pertinent information. Under the Brazilian Bankruptcy Law applicable here,

---

[2] The Brazilian Bankruptcy Law was recently amended. However, some features of those amendments, such as the creditors' right to file an alternative reorganization plan if the debtor's plan is not approved, apply only to bankruptcies filed after January 23, 2021. Because the Debtor filed for bankruptcy prior to that date, part of those new rules do not apply to the Debtor's pending Judicial Reorganization in Brazil. For purposes of this declaration, I therefore will refer to and describe the Brazilian Bankruptcy Law as amended only to the extent applicable to the Debtor.

[3] The Brazilian Bankruptcy Law also provides for a liquidation proceeding known as "*falência*" as well as an expedited, out-of-court reorganization proceeding known as "*recuperação extrajudicial*." However, because the Debtor's Brazilian insolvency proceeding takes the form of a Judicial Reorganization, I will focus on that form of proceeding in this declaration.

3

only a debtor may commence a Judicial Reorganization; creditors are not permitted to commence an 'involuntary' Judicial Reorganization against a debtor.

      A.      **Formal Commencement and Judicial Acceptance**

8.      A Judicial Reorganization proceeding is commenced upon the filing of the debtor's petition with the court, and the court's acceptance of that petition. Although the court must analyze the petition and the attached documents submitted in order to verify that the debtor meets all legal requirements for admission to the Judicial Reorganization, the filing of the petition itself triggers the initial effects of the Judicial Reorganization. For example, after the filing, a debtor is barred from paying claims subject to the restructuring proceeding, and can no longer dispose of or encumber its non-current assets without prior authorization of its creditors or the court. Further, except for tax claims and other claims not subject to the restructuring due to their nature, the filing date further determines whether or not a claim against the debtor will be subject to the Judicial Reorganization. Only claims that originated prior to filing will be mandatorily subject to the restructuring.

9.      Once a company has commenced a Judicial Reorganization by filing its petition, the court will analyze the submitted documents to confirm that the debtor meets the legal requirements for admission to Judicial Reorganization. For example, the debtor must demonstrate that (i) it has conducted business for more than two years; (ii) it is not already subject to a liquidation proceeding, and if it has been subject to a liquidation proceeding in the past, the resulting liabilities have been discharged by a final court decision; (iii) it does not have any other pending Judicial Reorganization case, and has not been granted a Judicial Reorganization award within the last 5 years; (iv) neither the debtor nor any of its senior

management have been convicted of any bankruptcy crime; and (v) it is facing an economic/financial crisis.

10.     If the debtor satisfies all of the filing and admissibility requirements, the court issues an order formally accepting the filing of the petition (the "**Acceptance Order**"). Further, the court orders publication in the relevant Brazilian state's Official Gazette (the "**Official Gazette**") of a notice containing a summary of its decision, along with, or in a separate notice, a nominal list of the debtor's creditors specifying the amount, kind and class of each claim, and a notice of the deadlines for creditors to challenge the claims listed in the creditors list. Within 15 days from the publication of such notice regarding the creditors list, creditors may present their proof of claim or any objections to the contents of the creditors list directly to a court-appointed Judicial Administrator (who is discussed further below). In the event that a creditor fails to timely submit its proof of claim, late filing may still be accepted by the judge (subject to additional fees and, except in case of labor claims, forfeiture of the right to vote in the General Meeting). After analysis of timely submitted proofs of holding and objections by the Judicial Administrator, a second creditors list is published, to which all creditors, the debtors or its shareholders and the Public Prosecutor's Office may present objections within 10 business days from the notice of its publication. After evaluating all objections, the court orders publication of a final list of creditors and claims.

11.     The Acceptance Order also initiates a 180-day stay of all collection lawsuits against the debtor that refer to the credits subject to the restructuring. Illiquid claims, tax claims and other exempt claims are not subject to Judicial Reorganization and, are consequently somehow exempt from the stay. In addition, Brazilian Bankruptcy Law provides that, even though not subject to Judicial Reorganization, during the stay period creditors are not allowed to sell or remove from

5

the debtor's place of business capital assets ("*bens de capital*") that are essential to debtor's business activity.

12. Foreign creditors have the same status as domestic creditors under the Brazilian Bankruptcy Law, which means that claims of a foreign creditor are subject to the Judicial Reorganization on the same terms as Brazilian creditors. Both foreign and domestic creditors are entitled to file proofs of claim for inclusion on the creditors list. Furthermore, foreign creditors have equal rights to information concerning the debtor as all other creditors (these informational rights are discussed below).

13. Following the Acceptance Order, the debtor's proceeding may be converted into a bankruptcy liquidation proceeding ("*falência*") if (a) the debtor fails to submit a reorganization plan (discussed below) within the 60 days' time period following publication of the Acceptance Order; (b) the creditors do not approve the proposed reorganization plan by the required majorities and the judge does not apply the cram down provisions as per Brazilian Bankruptcy Law (as detailed below); or (c) the debtor fails to comply with the terms of an approved and confirmed judicial reorganization plan. Following the conversion into a bankruptcy liquidation proceeding, the debtor will be declared *falido* or "bankrupt" (meaning it is not capable of reorganization) and the debtor's assets will be placed into liquidation.

B. **Debtor Operations During Judicial Reorganization**

14. As a general rule, a debtor retains the right to manage its assets and affairs and to run its business in the course of its Judicial Reorganization. The court will appoint a judicial administrator ("*administrador judicial*") (the "**Judicial Administrator**") to, among other things, oversee the debtor and manage the claims verification process. Specifically, pursuant to Article 22, I, "b" of the Brazilian Bankruptcy Law, the Judicial Administrator must

6

"provide promptly all information requested by interested creditors," and pursuant to Article 22, II, "c", it is required to submit to the case records a monthly report on the debtors' business activities. The Judicial Administrator is also responsible for demanding information from creditors, the debtor or their officers, publishing notice of the creditor list, applying to the judge to convene a creditors' meetings and chairing those meetings, reviewing and verifying all proof of claims and objections filed in relation to the creditors list, as discussed above.

15.     The Judicial Administrator, however, does not have the power to control or otherwise interfere with the debtor or its ongoing business operations. Rather, the Judicial Administrator serves the supervisory role and managing the list of creditors. More specifically, the Judicial Administrator will analyze the creditors list presented by the debtor and objections posed thereto by creditors in order to create and submit a first revised list of creditors. The Judicial Administrator is further in charge of informing the court if and when the debtor fails to meet its obligations under a confirmed plan (discussed below) or otherwise commits an unlawful act pursuant to the Brazilian Bankruptcy Law.

16.     While the Judicial Administrator performs these limited roles, the officers and directors of the debtor remain duly authorized to act on the debtor's behalf and to administer its assets and affairs during the Judicial Reorganization, in a manner similar to what I understand is called a "debtor-in-possession" regime in the United States. Specifically, Article 64 of the Brazilian Bankruptcy Law provides that "[d]uring the in-court restructuring procedure, the debtor and his officers shall be kept in the management of the business activity, overseen by the [c]ommittee, if any, and by the judicial administrator."[4] A debtor and its

---

[4]     Brazilian Bankruptcy Law; AAX 20, at Art. 64.5.

7

officers may be deprived of their management powers only by order of the court upon certain conditions set forth under Brazilian Bankruptcy Law, none of which apply here.

17. Thus, the management of the debtor in a Judicial Reorganization typically retains control over the debtor's business and assets, subject to certain restrictions on the sale or encumbrance of non-current assets or the establishment or assignment of security interests in these assets, and to the general oversight of the Judicial Administrator, the creditors, and the court. In accordance with Brazilian Bankruptcy Law, a debtor in a Judicial Reorganization generally remains in control of property and retains the power to operate customary business activities during the Judicial Reorganization. The executive officers remain in place and retain their regular management powers throughout the restructuring process. These powers include the power to execute contracts and agreements, to make ordinary business decisions, to define the business strategy, to negotiate with creditors, to present the plan of reorganization, to otherwise manage its own assets and affairs, and to appoint representatives or agents to act on behalf of the debtor. Only in the event that the debtor is liquidated will the Judicial Administrator represent the estate itself, at which point the Judicial Administrator has the authority to seize the debtor's assets and, with the approval of the court, sell and preserve assets and collect receivables.[5]

18. The Brazilian Bankruptcy Law also provides for the non-mandatory formation of a committee of creditors (the "**Creditors' Committee**") comprised of up to one representative from each of the following groups: (1) labor creditors, (2) secured creditors and/or creditors entitled to special privilege, (3) unsecured creditors and creditors with

---

[5] Brazilian Bankruptcy Law; AAX 20, at ¶ 22-III (c), (f), (j), (i), (n), (q).

statutorily privileged claims; and (4) small business corporate creditors. If one is formed, the Creditors' Committee serves as an oversight body that ensures the interests of the creditors are represented and protected throughout the Judicial Reorganization. Its primary role is to inspect and monitor the debtor's compliance with the Brazilian Bankruptcy Law, to inform the judge of any legal violations by the debtor, and to issue opinions on interested parties' claims. The Creditors' Committee is also entitled to request and obtain from the debtor any information relevant to the Judicial Reorganization for the benefit of all creditors, such as details related to the debtor's operations or assets. Although permitted under the Brazilian Bankruptcy Law, creditors rarely seek the formation of a Creditors' Committee in practice.

    **C.    Prevention of Preferential or Fraudulent Dispositions of the Debtor's Property**

19. Creditors have numerous ways to protect themselves against fraudulent transfers and willful misconduct by the debtor. For example, Brazilian Bankruptcy Law provides each of the creditors, the Public Prosecutor's Office, and the Judicial Administrator with the ability to bring revocation actions ("*ação revocatória*") in bankruptcy liquidation proceedings seeking to void transfers that are made to third parties with the intention to harm creditors or damage the debtor's estate. Creditors similarly can bring an *ação pauliana* to attempt to void transfers made by a debtor to third parties with the intention to harm creditors or that caused damages to the debtor's assets or its ability to pay its creditors. An *ação pauliana* can be pursued concurrently with an ongoing Judicial Reorganization and is generally not suspended as a result of an automatic stay on account of a debtor defendant's Judicial Reorganization.

20. Creditors may also introduce evidence of willful misconduct, deception, or fraud in the Judicial Reorganization, and if the Brazilian court finds sufficient evidence of

9

fraud or misconduct, the Brazilian court can replace the company's administrators as provided by Article 64 of the Brazilian Bankruptcy law.

21. Within a bankruptcy liquidation proceeding, fraudulent transfers may be avoided by court ruling if made during a set look-back term, a period of varying length set by the court but beginning not more than 90 days from (a) the bankruptcy request, (b) the debtor's petition or (c) the date of the first (non-cancelled or redeemed) protest by a creditor on account of default by the debtor under a payment obligation. Such transfers include payments of debts in a manner not provided for in the governing debt documents or in the plan (e.g., early payment, alternative means in the form or currency of payment, etc.), and the creation of liens or any other *in rem* encumbrance for payment of the antecedent debt. As such, if a debtor has been declared "bankrupt" and its Judicial Reorganization is converted to a liquidation proceeding, any of its creditors the Brazilian Public Prosecutor's Office, or the Judicial Administrator may bring avoidance actions seeking to unwind transfers made to third parties with the intent to harm creditors or deplete the debtor's assets, if such transfers are not provided for in the plan and the requirements for a revocation action are met.

**D.    The Reorganization Plan**

22. Following issuance of the Acceptance Order, the debtor has 60 days, with no opportunity for extension, to file a judicial reorganization plan. If the debtor does not comply with this obligation, it may be declared "bankrupted" and liquidated.

23. Upon filing its proposed plan with the court, the debtor is required to publish a notice of such filing in the Official Gazette. Creditors then have 30 days following such publication to object to the plan before the court. Should any creditor object, the court is required to call a general meeting of creditors (the "*Assembleia Geral de Credores*" or

"**General Meeting**") to vote on the plan. If no objections are raised by creditors (a rare occurrence) the court may confirm the plan, or may still choose to reject it if the plan contains provisions that the court determines are illegal under Brazilian Bankruptcy Law.

24.     The Brazilian Bankruptcy Law requires that a plan contain: (i) a thorough description of measures intended to successfully rehabilitate the company; (ii) a demonstration of the economic feasibility of the plan; and (iii) appraisals of the debtor's assets. I understand that these reports detail many of the same elements as those contained in a disclosure statement presented in a chapter 11 proceeding in the United States. In addition, a plan must set forth its proposed treatment of claims subject to the Judicial Reorganization. Parties in interest have the opportunity to object to any component of the plan as well as to the reports that accompany the plan.

25.     Further, a plan must provide for (i) payment of all labor-related claims within one year of plan confirmation (although payment of labor-related claims within two years of plan confirmation is also possible, provided that the requirements imposed by the recent amendments to the Brazilian Bankruptcy Law are met), and (ii) payment of wage and salary claims that fell due within the three months prior to the filing date, up to the limit of five minimum monthly wages per worker, within 30 days of confirmation date. Additionally, a plan may not provide for the suppression or replacement of any *in rem* security interest in the disposal of encumbered property without the express approval of the secured creditor holding such interest.

26.     The plan may also include the release of certain parties from any and all liability for certain actions (or inactions, as applicable) that occurred prior to approval of the plan. Permissible releases include both releases by the debtors of certain third parties and release of the

debtors and their affiliates, officers and directors, etc. from any liability arising out of actions prior to the approval of the plan. Brazilian case law has generally found that releases are not binding on creditors who were not present at the General Meeting, voted against the plan, or presented a written objection during the General Meeting.

27. In a Judicial Reorganization, the claims of affected creditors are paid according to the provisions outlined in the plan. At the General Meeting, the debtor and its various creditors are allowed to discuss the terms of the plan and may negotiate modifications. If these negotiations require additional time, the debtor and its creditors can propose and vote to adjourn the General Meeting for further, continued discussions.[6] In the event that the parties reach a consensus as to modifying the plan, the plan may be so modified and submitted for voting in its modified form at the General Meeting.

28. Under the Brazilian Bankruptcy Law regime applicable to the Debtor, only the debtor, and not any of its creditors, is permitted to propose a judicial reorganization plan.[7] If a creditor does offer an alternative plan, it cannot be put to a vote of the creditors unless the debtor consents. Therefore, creditors cannot force a debtor to accept a competing plan, and the debtor has the ultimate say on modifications to the plan. Creditors are empowered only to vote for or against the plan that is submitted. At the General Meeting, creditors may also vote on other matters unrelated to approval of the plan itself. Pursuant to articles 38, 42 and 45 of the Brazilian Bankruptcy Law, all matters voted on at the General Meeting that are unrelated

---

[6] The recent amendments to the Brazilian Bankruptcy Law provide that if the General Meeting is assembled and adjourned, then it must resume and be concluded within 90 days. Prior to these recent amendments, General Meetings often were adjourned several times, sometimes for months, until the parties agreed to a reorganization plan. Only time will tell how Brazilian courts will interpret this provision and the consequences if a General Meeting is adjourned but not resumed and concluded within 90 days.

[7] As noted above, recent amendments to the Brazilian Bankruptcy Law permit creditors to submit alternative debt restructuring plans, but this amendment does not apply here.

to approval of the plan itself shall be considered accepted if approved by a simple majority of the amount of claims present at the General Meeting.

29. For purposes of voting on a plan, claims are divided into four classes: (1) labor-related claims ("**Class I**"); (2) secured claims ("**Class II**"); (3) unsecured claims, statutorily or generally privileged claims, and subordinated claims ("**Class III**"); and (4) claims held by "small companies," as defined under the Brazilian Bankruptcy Law ("**Class IV**").

30. Under the Brazilian Bankruptcy Law, the General Meeting can be assembled in first call only if it is attended by creditors (or valid representatives thereof) holding more than 50% of the value of total allowed claims in each of the four classes of creditors. Only creditors present at the General Meeting or those who have timely delivered a valid proxy to an attendee may vote on the plan. Creditors who are absent with no proxy and those abstaining from voting, even if affected under the plan, are not counted for the purposes of establishing a quorum or for approval or rejection of the plan.

31. Each impaired creditor may vote on the plan provided the creditor is neither an equity holder of the debtor nor a "related party" to a shareholder of the debtor. Unimpaired claims and claims not subject to the Judicial Reorganization, such as those guaranteed by a "fiduciary lien" (i.e., a fiduciary assignment of contract rights – "*cessão fiduciária*" – or a fiduciary sale of assets – "*alienação fiduciária*"), or deriving from leasing transactions or advancements of foreign exchange agreements are not affected by the plan and thus holders of such claims, are not entitled to vote.

32. Shareholders of companies undergoing reorganization may attend the General Meeting purely in a spectator capacity, and are not entitled to vote on the plan. Pursuant to Article 43 of the Brazilian Bankruptcy Law, partners and related parties are prohibited from

13

casting votes at the General Meeting, and related parties include (i) companies in which a debtor has an interest of more than 10% of that company's capital stock or (ii) holders of more than 10% of the capital stock of a debtor.

33. Creditor classification is relevant both to voting on and treatment of claims under a plan. Generally, according to Brazilian case law, creditors within the same class must receive equal treatment unless there is a justified reason for treating a subgroup of claims differently and the differing treatment is fair and adequate to the position of the creditor, considering the type and nature of the claims. Appropriate justifications include, for example, the need for prioritizing payment of past-due claims of critical suppliers which are essential for the continuation of the debtor's activities, or the need to give special treatment to creditors providing the debtor with additional financing during the Judicial Reorganization. The Brazilian Bankruptcy Law similarly permits plans that allow creditors from the same class to select among different payment options made available.

34. Brazilian Bankruptcy Law does not impose a requirement that unsecured creditors must receive full satisfaction of their claims for shareholders to retain any equity under a plan.

35. Once the plan is put to a creditors' vote at a General Meeting, three outcomes are possible: (1) all classes of creditors approve the plan; (2) the plan is "crammed-down" on the dissenting class or classes; or (3) the creditors reject the plan, and the Judicial Reorganization is converted to a *falência* (although sometimes courts are flexible and grant an additional period for the debtor to submit a new reorganization plan before this conversion).

36. Approval of a plan requires approval by a required majority of each class of claims. Specifically, approval in Classes I and IV requires support from a simple numerical majority (more than 50%) of creditors present and voting at the General Meeting, regardless

of the value of claims held. Approval in each of Classes II and III requires assent from (i) more than 50% of the number of creditors in such class present and voting at the General Meeting, and (ii) creditors holding more than 50% in face value of the total allowed claims in such class held by creditors present and voting at the General Meeting.

37. If any class of claims fails to approve the plan, the court may still approve the plan via a cram-down of the rejecting class if the following cumulative requisites are met:

    a. holders of a simple majority in face value of all allowed claims present and voting at the General Meeting vote to approve the plan;

    b. at least three out of four classes of claims (or two out of three, in the case of a Judicial Reorganization with only three classes; or one out of two, in the case of a Judicial Reorganization with only two classes) vote in favor of the plan; and

    c. more than 1/3 (one third) of creditors in each class rejecting the plan vote to approve the plan.

38. In addition, cram-down requires that the plan does not provide for discriminating treatment among the creditors of the class that rejected it.

39. If the plan is not approved by majority voting or crammed-down on dissenting classes, the court may convert the Judicial Reorganization to a *falência*. Conversely, if the plan is approved by majority voting or through cram-down, the court is required to issue an order confirming the plan (the "**Plan Confirmation Order**"), unless the court deems plan provisions or the voting that took place to approve it to be illegal under Brazilian law.

40. The Brazilian Bankruptcy Law provides for wide transparency and disclosure of information in order to make an informed decision when voting on the plan and making other relevant decisions under the Judicial Reorganization. Per Article 51 of the Brazilian Bankruptcy Law, the initial petition must be accompanied by documents showing relevant

15

financial information, such as financial records of the company for the last three years and updated bank account statements, including all investments.

41. Per Article 53, item III of the Brazilian Bankruptcy Law, debtors are also obliged to present, along with the plan, an appraisal of their assets and a feasibility report analyzing the turnaround strategy and business plan under the plan.

42. Also, as stated above, the Judicial Administrator must submit monthly activity reports providing updates on the status of the Judicial Reorganization in particular and the debtor's restructuring process generally (the "**JA Monthly Reports**"). The JA Monthly Reports include relevant notices to the market published by the debtor, managerial cash flow statements, and may also include summaries of the filings in the Judicial Reorganization.

43. Pursuant to Brazilian Bankruptcy Law, after a plan has been approved, the Public Prosecutor's Office issues an opinion regarding confirmation of the plan stating whether the plan comports with Brazilian law and whether it supports entry of an order confirming the plan. Subsequently, except for provisions that may become immediately effective following the plan approval by creditors, the plan becomes effective, according to its terms, following publication of the Plan Confirmation Order in the Official Gazette.

44. Within five business days after the publication of the decision confirming the plan, creditors may file a motion for clarification in regards to the confirmation order, tolling the term to file an interlocutory appeal. The deadline to file interlocutory appeals to the State Court of Appeals (the "**State Court of Appeals**") is fifteen business days counted from either (i) the publication of the decision confirming the plan in the Official Gazette – if no motions for clarifications are filed, or (ii) the publication of the decision on the motion for clarifications in the Official Gazette. Parties in interests may file new motions for clarifications once the decision on

the first motion is published in the Official Gazette, thereby tolling once again the term to file an appeal. Creditors dissatisfied with any legal conclusions of the State Court of Appeals may also file special appeals within 15 business days to the Superior Court of Justice and/or to the Supreme Court. The special appeal is generally admissible only in cases that do not require discussion of facts or evidence but merely concern strictly federal and constitutional law interpretation matters. Throughout the confirmation and appeals process, creditors are given notice through publication in the Official Gazette of every court decision. Further, the period within which appeals must be filed does not begin to run until creditors have been given proper notice of decisions they may wish to appeal through such publication, thus ensuring adequate time for creditors to respond.

45. During the course of these appeals and motions to clarify, the Plan Confirmation Order is binding on all parties as long as its effects are not expressly stayed by court order. Following the resolution of every appeal, including those to the Brazilian Superior and Supreme Courts, if any, the Plan Confirmation Order will become final and binding on all parties under Brazilian law.

46. Following plan confirmation, the court may order the debtor to remain formally in Judicial Reorganization until all obligations established in the plan and due within a maximum of two years after the date of entry of the Plan Confirmation Order have been satisfied. If within those years the debtor fails to comply with any of its obligation under the plan, the court is required to declare the debtor bankrupt and convert the Judicial Reorganization into a liquidation proceeding. If the debtor complies with all such obligations, the court will issue an order formally closing the debtor's Judicial Reorganization. The Brazilian Bankruptcy Law provides that a judicially confirmed plan represents a novation of all restructured claims and is binding on the debtor as well as the holders of restructured

claims. If the debtor fails to perform any of its obligations under the plan after closure of the Judicial Reorganization, any creditor bound by the plan may file an action seeking specific performance or the debtor's liquidation.

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the foregoing is true and correct.

Executed on this 11th day of February, 2021 in Rio de Janeiro, State of Rio de Janeiro, Brazil.

<i>/s/ Sérgio Ricardo Savi Ferreira</i><br>
Sérgio Ricardo Savi Ferreira